UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

| | | |
|---|---|---|
| In re | ) | Chapter 7 |
| | ) | |
| | ) | |
| MARGARET MOON | ) | Case No. 04-10881 (REG) |
| | ) | |
| | ) | |
| | ) | |
| Debtor. | ) | |
| ———————————————————— | ) | |
| | ) | |
| ANGELA TESE-MILNER, as Chapter 7 | ) | Adversary No. 05-01135 (REG) |
| Trustee of Margaret Moon | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| - against - | ) | |
| | ) | |
| MARGARET MOON, KENNETH PAUL, | ) | |
| and SPECIALTY CLAIMS MANAGEMENT | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————————— | ) | |

## DECISION ON MOTIONS FOR SUMMARY JUDGMENT

APPEARANCES:

TESE & MILNER, LLP
Counsel for the Chapter 7 Trustee
One Minetta Lane
New York, NY 10012
By:      Angela Tese-Milner, Esq.

WHITE & McSPEDON, P.C.
Counsel for Specialty Claims Management
875 Avenue of the Americas, Suite 800
New York, NY 10001
By:      Wayne S. Leibert, Esq.

KENNETH PAUL, ESQ.
*Pro Se*
666 Third Avenue
New York, NY 10017

MARGARET MOON
*Pro Se*
1460 College Avenue, Apt. 3C
Bronx, NY 10457


BEFORE:      ROBERT E. GERBER
             UNITED STATES BANKRUPTCY JUDGE

In this adversary proceeding under the umbrella of the chapter 7 case of Margaret Moon (the "Debtor"), plaintiff Angela Tese-Milner, the chapter 7 trustee in this case ("Trustee"), seeks relief arising from an unauthorized postpetition settlement of a pre-petition personal injury action (the "Personal Injury Action") that had been brought on the Debtor's behalf.  Relying principally on sections 549 and 550 of the Code (generally authorizing the recovery of unauthorized postpetition transfers) and 542 and 543 of the Code (generally authorizing turnover of estate property from third parties and estate custodians), respectively, the Trustee seeks to recover $46,500, the full amount of the settlement, from each of defendant Kenneth Paul—the lawyer who prosecuted and settled the Personal Injury Action—and defendant Specialty Claims Management (the "Claims Agent")—the claims processing agent for the Debtor's opponent's insurer in that action.  The Trustee also seeks revocation of the Debtor's discharge pursuant to sections 727(d)(1) or (2) of the Code.

The $46,500 that is sought (the "Settlement Proceeds") represents the total proceeds from the post-petition settlement of the Personal Injury Action.  The Debtor advised Mr. Paul, inaccurately, that while she had considered filing a bankruptcy case, she had not actually done so, and confirmed that representation in an affidavit.  But in fact a bankruptcy lawyer the Debtor

had consulted (a Mr. Jason Lutsky), had filed a bankruptcy petition on her behalf.  Unaware that

the bankruptcy case had actually been filed, Mr. Paul did not reach out to the Trustee to give the

Trustee control of the Personal Injury Action; seek to be retained as special counsel for the

Trustee in continuing the Personal Injury Action's prosecution; seek Court approval of the

settlement; or account to the Trustee for the settlement.  Rather, after receiving the Settlement

Proceeds and placing them in his trust account, Mr. Paul dealt with them as tort lawyers normally

do; with an exception not material here, he took payment of his contingent fee and

disbursements, and paid the rest to the Debtor.  The portion that the Debtor received is now

unrecoverable.

The Claims Agent never was a recipient of the Settlement Proceeds (and was actually the

*payor* of them when the case was settled), but is nevertheless sued as a consequence of its role in

the events described above and below.

The Claims Agent moves for summary judgment, arguing, among other things, that under

the facts here, the Claims Agent cannot be liable under section 542 or section 543.  In turn, the

Trustee also moves for summary judgment, against each of the Claims Agent and Mr. Paul,

arguing that each is liable to the estate, and for *the entirety* of the Settlement Proceeds.  Finally,

the Trustee moves for summary judgment revoking the Debtor's discharge on the ground that the

Debtor secured her discharge by fraud, and knowingly and fraudulently concealed the Settlement

Proceeds from the Trustee and the Court.

For the reasons set forth below, the Claims Agent's summary judgment motion is

granted, and the Trustee's summary judgment motion insofar as directed at the Claims Agent is

denied. The Trustee's summary judgment motion insofar as directed at Mr. Paul is granted to the

extent, but only the extent, that it covers the portion of the Settlement Proceeds that Mr. Paul

received for his fees and expenses.  The Trustee's summary judgment motion as directed at Mr.

Paul for the remainder of the Settlement Proceeds is denied.  The Trustee's summary judgment

motion as directed at the Debtor is denied.

Facts

As noted below, the Court finds issues of fact with respect to the Debtor's knowledge and

intent in saying the things she did (and failing to say other things) to Mr. Paul, the Trustee, and

the Court.[1]  But facts sufficient to decide most of the summary judgment motions are undisputed.

They are as follows.

A chapter 7 petition on the Debtor's behalf was filed in this Court on February 12, 2004.

The present record is inadequate to make a finding as to the extent, if any, to which the Debtor

was told, or aware, that the petition was filed on (or around) that day.  The Debtor's petition and

related schedules and statements listed no non-exempt assets, and made no mention of any

ongoing litigation to which she was a party.

However, at the time the Debtor's chapter 7 petition was filed, she was in fact a party to

the Personal Injury Action—an action in Supreme Court, Bronx County, arising from a slip-and-

fall injury at Sam's Restaurant.  Mr. Paul, an individual practitioner, had brought the Personal

Injury Action on the Debtor's behalf, and represented the Debtor in that lawsuit.  The Claims

Agent, a third-party administrator for Sam's Restaurant's insurer, entered into settlement

negotiations with Mr. Paul in February 2004.

---

[1]    Matters involving knowledge and intent are not infrequently difficult to decide on motions for summary judgment, and this case typifies the cases presenting such difficulties.  The Court's difficulties in this regard are exacerbated by confused and arguably inconsistent statements by the Debtor and the inexplicable failure of the parties to obtain testimony from Jason Lutsky.  While it appears undisputed that the Debtor visited Mr. Lutsky's office at least twice—with the latter visit aimed at either confirming that a bankruptcy petition had not been filed during the first visit or to withdraw it—the Court cannot make any further factual findings at this time as to the substance of those meetings or to the Debtor's mental state in filing her petition and in the disclosures she made in connection with it.

At some point in early February 2004, while conferring with his client in furtherance of the settlement discussions with the Claims Agent, Mr. Paul first learned of the Debtor's "financial difficulties."[2] The Debtor advised Mr. Paul that she had seen a bankruptcy attorney "to get information about whether she qualified for bankruptcy…."[3] The Debtor was "very unclear" on whether she had actually initiated the filing of a bankruptcy petition on her behalf, and therefore Mr. Paul directed her to consult the bankruptcy attorney to ensure that no such petition had been filed.[4] Mr. Paul testified that the Debtor subsequently conferred with her bankruptcy counsel and made clear to Mr. Paul "that nothing had gone forward beyond her initial contact" and that the "case was closed in her mind…."[5] There is no evidence in the record to suggest that Mr. Paul's account was untruthful or incomplete in this (or any other) regard.

In light of the Debtor's revelations, Mr. Paul raised the issue of the Debtor's financial troubles with the Claims Agent. Mr. Paul told either Timothy O'Donovan, opposing counsel in the Personal Injury Action (who was coordinating with the Claims Agent's in-house personnel), or Thomas Devine, a litigation adjuster at the Claims Agent, that his client was having financial difficulties and had gone "to a bankruptcy office … for [a] consultation about possibly going forward" with a future filing.[6] The substance of this exchange was reflected in contemporaneous emails sent between Mr. Devine and Mr. O'Donovan on February 12, 2004 and February 13,

---

[2]     Paul Dep. Tr. at 18-19.

[3]     *Id.* at 26.

[4]     *Id.* at 27.

[5]     *Id.* at 38.

[6]     *Id.* at 24.

2004 (the "O'Donovan/Devine Emails"), in which Mr. O'Donovan informed Mr. Devine that

Mr. Paul had advised that Mr. Paul's client was "contemplating bankruptcy" but had not filed.[7]

The Claims Agent apparently was not satisfied to rely solely on the oral representations

of the Debtor (or even Mr. Paul), and thus insisted that the Debtor prepare an affidavit

confirming that she had not filed a bankruptcy petition.  The Debtor thereafter signed a sworn

affidavit (the "Moon Affidavit") dated March 3, 2004—20 days after her actual bankruptcy

filing—declaring that she had "not filed for any bankruptcy proceedings in any court and there is

presently no petition pending to be filed with any court."[8]  On the same day, the Debtor also

signed a release in connection with the settlement of the Personal Injury Action, and on March

19, 2004 the Claims Agent delivered a check for the Settlement Proceeds to Mr. Paul in

exchange for the Debtor's release and settlement of the lawsuit.  Mr. Paul deposited the check in

his attorney trust account, and after paying a Medicaid lien that attached to those proceeds and

subtracting the $15,109.93 in legal fees and $1,170.20 in expenses owed to him under his

contingent fee arrangement, he remitted the remaining $28,917.87 directly to the Debtor.[9]  The

Debtor gave portions of the Settlement Proceeds that she received to her children, grandchildren

and great-grandchildren or otherwise spent the money,[10] and it is no longer recoverable.

---

[7]     *See* Claims Agent Summ. Judgment Motion Exh. H.  In the other email included in Exh. H, Mr. Devine
wrote to Mr. O'Donovan that Mr. Paul "has indicated … the plaintiff has filed for bankruptcy." (emphasis
omitted).  By affidavit, Mr. Devine explained that this email evidenced a "poor choice of words" by
someone "not familiar with … bankruptcy issues" and that, consistent with Mr. Paul's testimony, Mr. Paul
had actually stated to Mr. Devine only that his client was "contemplating bankruptcy … but had not filed."
*See* Devine Aff. at ¶ 8.

[8]     *See* Claims Agent Summ. Judgment Motion Exh. F.

[9]     *See* Paul Dep. Tr. at 47-48.  For easier reading, the sums paid and sought to be recovered will be rounded to
$16,000 and $29,000, respectively.

[10]    *See* Moon Dep. Tr. at 55-58.

While the Claims Agent and Mr. Paul were pursuing a settlement of the Personal Injury Action as described above, the Debtor's bankruptcy case was relatively dormant. The Debtor failed to appear at her first scheduled section 341(a) creditors meeting, although she states that she never received notice of that meeting. Thereafter, on May 13, 2004, in accordance with routine practice, the Clerk of the Court caused the entry of the Debtor's discharge. At some point after the Debtor's discharge, the Trustee called Mr. Lutsky, the Debtor's bankruptcy attorney, and during that call first learned of the Debtor's prior settlement of the undisclosed personal injury lawsuit.[11]

Mr. Paul never sought, and the Court thus never approved, his retention under section 327 of the Code to act on behalf of the Trustee during the post-petition settlement negotiations. Similarly, neither Mr. Paul's contingent fee for settling the personal injury lawsuit, nor the actual settlement with the Claims Agent, was ever approved by the Court, under section 330 of the Code or Fed.R.Bankr.P. 9019, respectively. The Settlement Proceeds were never turned over to the Trustee. The Court further notes and finds, however, that there is no evidence that Mr. Paul engaged in any knowingly wrongful, unethical, or otherwise sanctionable conduct. The same is true with respect to the Claims Agent. Thus the issues discussed below must be decided based on the extent, if any, to which Mr. Paul and/or Claims Management is liable to the estate on some other basis.

---

[11]        *See* Tese-Milner Dep. Tr. at 20.

<u>Discussion</u>

<u>I.</u>

<u>Summary Judgment Standard</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[12] The moving party bears the initial burden of showing that the undisputed facts entitle it to judgment as a matter of law.[13]

In determining a summary judgment motion, it is well settled that the court should not weigh the evidence or determine the truth of any matter, and must resolve all ambiguities and draw all reasonable inferences against the moving party.[14] A fact is material if it "might affect the outcome of the suit under the governing law…."[15] An issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[16]

The standards for determining a summary judgment motion apply equally to cases, like the instant one, in which both parties move for summary judgment.[17] As a result, "when parties

---

[12]    FED. R. CIV. P. 56(c), made applicable here by FED. R. BANKR. P. 7056.

[13]    *See Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995); *Ferrostaal, Inc. v. Union Pacific R.R. Co.*, 109 F. Supp. 2d 146, 148 (S.D.N.Y. 2000) ("The initial burden rests on the moving party to demonstrate the absence of a genuine issue of material fact . . . .").

[14]    *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (holding that summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party"); *Virgin Atlantic Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 262 (2d Cir. 2001); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) ("We…constru[e] the evidence in the light most favorable to the non-moving party.").

[15]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[16]    *Id.*

[17]    *Bronx Household of Faith v. Board of Educ. of City of New York*, 492 F.3d 89, 96 (2d Cir. 2007) (citing *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

have filed cross-motions for summary judgment, the court 'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'"[18]

## II.
## Claims Against Mr. Paul

The Trustee moves for summary judgment against Mr. Paul on three grounds.  First, as Mr. Paul was never retained pursuant to section 327, the Trustee argues that he must disgorge the $16,000 post-petition contingent fee and related disbursements that he accepted when achieving the settlement of the Personal Injury Action.  Second, the Trustee asserts that the transfer of the Settlement Proceeds from Mr. Paul to the Debtor was an avoidable post-petition transaction under section 549, and that Mr. Paul, as an "initial transferee" of that transfer (within the meaning of section 550(a)(1) of the Code), is liable to the Estate under section 550 for the entire $46,500 in Settlement Proceeds.  Finally, the Trustee asserts that the transfer of the Settlement Proceeds from Mr. Paul's trust account (principally to the Debtor but also to himself) constituted a common-law conversion of estate property, for which Mr. Paul is also liable.  For the reasons set forth below, the Court grants the Trustee's motion for summary judgment to the extent it seeks disgorgement of the fees and disbursements Mr. Paul received, but denies the motion as to the other relief sought.

A.    *Disgorgement of Post-Petition Legal Fees and Disbursements*

Section 327 of the Bankruptcy Code provides, among other things, that a trustee may employ attorneys with the bankruptcy court's approval.  Here, where the retention of an attorney for the estate would have been for a limited purpose (*i.e.*, the prosecution of a personal injury lawsuit), special counsel for the estate should have been retained under section 327(e).

---

[18]    *Id.* (quoting *Hotel Employees & Rest. Employees Union, Local 100 v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002)).

With an exception not relevant here (relating to professionals retained for official committees in chapter 11 cases, under section 1103 of the Code), section 330(a)(1) of the Bankruptcy Code provides, in relevant part:

> After notice to the parties in interest and the United States Trustee and a hearing … the court may award *to ... a professional person employed under section 327…—*
>
> (A) reasonable compensation for actual, necessary services….
>
> (B) reimbursement for actual, necessary expenses.[19]

Thus, the bankruptcy court cannot award interim or final compensation to an attorney for the estate unless the court has already authorized the attorney's retention under section 327.  An attorney whose retention has not been approved by the bankruptcy court prior to the time that the attorney renders services is not within the class of persons that is eligible for compensation from the estate.  As the Supreme Court held in *Lamie v. United States Trustee*:[20]

> Adhering to conventional doctrines of statutory interpretation, we hold that § 330(a)(1) does not authorize compensation awards to … attorneys from estate funds, unless they are employed as authorized by § 327.  If the attorney is to be paid from estate funds under § 330(a)(1) in a Chapter 7 case, he must be employed by the trustee and approved by the court.[21]

In the Second Circuit, this represents a *per se* rule that forbids the allowance of compensation for any professional services rendered prior to the attorney's retention by order of the bankruptcy court.[22]

---

[19]   Emphasis added.

[20]   540 U.S. 526 (2004).

[21]   *Id.* at 538.

[22]   *See, e.g.*, *Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.)*, 655 F.2d 463, 469 (2d Cir. 1981)

Unfortunately for Mr. Paul (and notwithstanding his good faith and the absence of any knowingly wrongful conduct), the Court never approved the retention of Mr. Paul as an attorney for the estate. The Debtor's rights to recover in the Personal Injury Action were estate property, and the settlement of the Personal Injury action took place after February 12, 2004—the date the Debtor's chapter 7 case was filed. The Settlement Proceeds were likewise property of the estate. A distribution of estate property (like the Settlement Proceeds, or portions of the Settlement Proceeds, like Mr. Paul's contingent fee) could be effected only in accordance with applicable bankruptcy law.

With exceptions not relevant here, section 549 of the Bankruptcy Code provides:

> (a) ... [T]he trustee may avoid a transfer of property of the estate—
>
>> (1) that occurs after the commencement of the case; and
>>
>> (2)... (B) that is not authorized under this title or by the court.

When Settlement Proceeds (including the portion to which he had a prepetition contractual entitlement), were paid out of Mr. Paul's attorney trust account to the Debtor and Mr. Paul, those were unauthorized post-petition transfers of estate property, avoidable under section 549. Though for reasons discussed below, Mr. Paul is not liable for portions of the Settlement Proceeds that he did not himself receive, he is an "initial transferee" of the portion of the Settlement Proceeds that he did receive, and thus is liable for the repayment of his contingent fee.[23]

---

[23] *See In re EZ Feed Cube Co., Ltd.*, 123 B.R. 69, 74 (Bankr. D. Or. 1991) (if action is timely, trustee may recover legal fees paid post-petition without court authorization under section 549, and, in any event, court, may, on its own motion or upon the request of any party in interest, including the trustee, invoke its powers under § 105(a) to order a professional to repay unauthorized fees to the estate).

Mr. Paul argues that the Court, in the exercise of its equitable discretion, should permit him to keep the contingent fee because he did not have actual knowledge of the Debtor's bankruptcy petition, and took his fee for services actually rendered under a mistake of fact and in good faith. The factual premises for his arguments are correct, and the Court understands his frustrations in this regard. But the Court is constrained to follow the law.

The caselaw cited above—including binding precedent from the Supreme Court and Second Circuit—as well as textual analysis of the unambiguous language of sections 327 and 330 of the Code, makes clear that the requirements of those two sections had to be complied with. Post-petition payments contrary to the requirements of sections 327 and 330 were unauthorized, and avoidable under section 549. They are recoverable under section 550, subject to the limitations section 550 imposes. The provisions of chapter 5 of the Code (wherein sections 549 and 550 lie) are not infrequently infuriating to those who must return cash to an estate even when they acted entirely innocently, but they implement a Congressional purpose to achieve one of the most fundamental principles of American Bankruptcy law—equality of treatment amongst creditors. And section 549 likewise implements an important federal purpose: to ensure that disbursements from bankruptcy estates be made only as permitted by federal bankruptcy law. But even if the applicable statutory provisions were not as fundamental to bankruptcy policy, the Court would nevertheless be constrained to enforce them.

Mr. Paul has not attempted to establish statutory exceptions to the application of any of sections 327, 330, 549 or (as applicable to his retainer) section 550, but has instead noted the equitable nature of the bankruptcy courts and a bankruptcy judge's power under section 105(a) to "safeguard against unjust results."[24] While Mr. Paul is correct that bankruptcy courts are courts

---

[24]     Paul Obj. to Motion for Summ. Judgment at 14.

of equity, they are nevertheless courts of law.  It is well settled that a bankruptcy court's equitable powers are not boundless, and that they cannot be exercised in direct contravention of provisions of the Code.[25]  Here, Mr. Paul asks the Court to do exactly that which the Second Circuit has explicitly forbidden—to achieve under the cloak of "equitable discretion" what the Code's unambiguous language clearly prohibits.

Thus, insofar as the Trustee seeks repayment of the $16,280.13 of the Settlement Proceeds that actually went to Mr. Paul for his contingent fee and expenses, her motion is granted.

B.    *Claim Against Mr. Paul For Portion of Settlement Proceeds That Went to the Debtor*

The Trustee also seeks summary judgment against Mr. Paul for the portion of the Settlement Proceeds that he did not receive, and that instead went to the Debtor.  The Trustee argues that Mr. Paul is an "initial transferee" of the Settlement Proceeds (within the meaning of section 550 of the Code quoted and discussed below), and hence is liable for the *entirety* of the Settlement Proceeds—including the additional $30,000 beyond the portion that Mr. Paul retained as his contingent fee.  However, as discussed in more detail below, Mr. Paul is not an "initial transferee" but rather only a "mere conduit," as that expression has been used in avoidance action law.  Thus he cannot be held liable to the estate for the entirety of the Settlement Proceeds.

---

[25]    *See In re Aquatic Dev. Group, Inc.*, 352 F.3d 671, 680 (2d Cir. 2003) (Straub, J., concurring) ("[T]his Court has repeatedly cautioned that 105(a) does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.") (internal quotations and citations omitted); *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 & n.4 (2d Cir. 1994) ("It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process.... We have repeatedly emphasized the importance of the bankruptcy court's equitable power." But "[t]his power is not unlimited. Thus, a bankruptcy court may not exercise this power in contravention of provisions of the Code."); *In re Ames Dept. Stores, Inc.*, 306 B.R. 43, 58 n.49 (Bankr. S.D.N.Y. 2004) (Gerber, J.) (discussing and applying those cases).

As noted above, the disbursements of the Settlement Proceeds following the post-petition settlement of the Personal Injury Action were avoidable transactions under section 549.  But having determined that any transfer of the Settlement Proceeds would be avoidable, the key inquiry here is *from whom* the Trustee can recover the value of the avoided transfer, or any part of it.

Section 550(a) of the Bankruptcy Code provides, in relevant part:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section … 549 …the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> (1) the *initial transferee* of such transfer….[26]

The Bankruptcy Code does not define "initial transferee" and there is no helpful legislative history.[27]  The seminal Second Circuit case on this issue arose out of the *Finley Kumble* bankruptcy.[28]  There, the Second Circuit adopted what has been called the "mere conduit" test—a derivation of the "dominion and control" test most prominently articulated by the Seventh Circuit in *Bonded Financial*.  The test requires a court to consider whether an entity alleged to be an "initial transferee" actually has "dominion over the money or other asset…."[29]

In *Bonded Financial*, the Seventh Circuit held that one does not have dominion and control over an asset until it is free to use it as it so desires—in essence, as the Seventh Circuit colorfully noted, to put such funds towards purchasing "lottery tickets or uranium stock" if one

---

[26]   Emphasis added.

[27]   *See Bonded Fin. Svcs. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988) ("*Bonded Financial*").

[28]   *See Christy v. Alexander & Alexander of New York, Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52 (2d Cir. 1997) ("*Finley Kumble*").

[29]   *Finley Kumble*, 130 F.3d at 57 (quoting *Bonded Financial*, 838 F.2d at 893).

were so inclined.[30]  If an entity is not permitted—by law, contractual obligation or otherwise—to

expend the assets as it desires, it is not an "initial transferee", but rather a "mere conduit" that

cannot be held liable under section 550.[31]

In *Finley Kumble*, the Second Circuit held that an insurance broker that transferred

premiums from the debtor to various insurance providers "had no discretion or authority to do

anything else but transmit the money."  Therefore, despite the parties' complex commercial

relationship, the broker was a mere conduit as to those relevant transactions.[32]  Similarly, the

court in *Bonded Financial* held that a bank that received a check, payable to the bank's order,

with instructions to deposit it into a customer's account was not an "initial transferee" of those

funds, but rather a mere financial intermediary.  The court noted that "[u]nder the law of

contracts, the Bank had to follow the instructions that came with the check …. The Bank

therefore was no different from a courier or an intermediary on a wire transfer; it held the check

only for the purpose of fulfilling an instruction to make the funds available to someone else."[33]

Following these settled precedents, the Court rejects the contention that Mr. Paul was an

"initial transferee" as to the entirety of the Settlement Proceeds—based on the fact that the full

amount of the Settlement Proceeds initially went into his attorney trust account, or otherwise.[34]

---

[30]    *Bonded Financial*, 838 F.2d at 893-894.

[31]    *See Security First Nat'l Bank v. Brunson (In the Matter of Coutee)*, 984 F.2d 138, n.4 (5th Cir. 1993) ("*Coutee*") ("Dominion or control means legal dominion or control.  Thus, the fact that the firm could have violated its fiduciary obligation to the Coutees by taking the money out of the trust account and spending it as it pleased would make no difference in the analysis.").

[32]    *Finley Kumble*, 130 F.3d at 59.

[33]    *Bonded Financial*, 838 F.2d at 893.

[34]    The court in *Finley Kumble* left open the question of whether a conduit would be liable for the portion of the transferred assets that it did not pass directly to a third party but rather retained as a fee or commission, *see* 130 F.3d at 59, but the majority rule is that "[w]here a mere conduit' retains possession of some portion of the funds, he will be held liable up to the amount which he retains."  *In re 360Networks (USA) Inc.*, 338 B.R. 194, n.11 (Bankr. S.D.N.Y. 2005) (quoting *In re Maxwell Newspapers*, 151 B.R. 63, 70 (Bankr.

After the Settlement Proceeds were first transferred from the Claims Agent to Mr. Paul,

he deposited the Settlement Proceeds in his segregated attorney trust account.  But he did not

have the requisite control over the entirety of the Settlement Proceeds, as a consequence of his

contractual duties to his client, and the ethical obligations that attorneys, at least in New York,

have with respect to funds in their trust accounts.   At no point was Mr. Paul legally permitted to

use the portion of the Settlement Proceeds in his trust account to which he had to account to his

client.  He would have been subject to contractual liability and serious ethical consequences if

had he attempted to purchase "lottery tickets or uranium stock" with moneys held in his

attorney's trust account.[35]

As in *Finley Kumble*, upon receipt of the Settlement Proceeds and depositing them into

his trust account, Mr. Paul "had no discretion or authority to do anything else but transmit the

money."  Accordingly, Mr. Paul was a mere conduit as to the Settlement Proceeds (or at least the

portion of them to which he had to account to his client) and cannot be held liable to the Trustee

under Section 550.[36]

---

S.D.N.Y. 1993)).  In accordance with textual analysis and the majority rule, the Court has ruled that Mr. Paul would be liable under section 550 for the portion that he did retain.  In any event, Mr. Paul would have to disgorge his contingent fee pursuant to sections 327 and 330, and, if necessary, section 105(a).

[35]   "Misuse of an attorney escrow account constitutes serious misconduct that may, in some instances, result in disbarment." *In the Matter of Reynold N. Mason*, 100 N.Y.2d 56, 60 (N.Y. 2003).  As discussed in *Coutee*, the "dominion and control" test refers to a person's *legal* rights and powers; it is therefore immaterial for the purposes of this analysis that an attorney in Mr. Paul's position could have violated his fiduciary obligations by raiding the attorney trust account.  *See supra* note 31.

[36]   *Gropper v. Unitrac, S.A. (In re Fabric Buys of Jerico, Inc.)*, 33 B.R. 334 (Bankr. S.D.N.Y. 1983) ("*Gropper*"), a case the *Finley Kumble* court attributed as the first to articulate the "mere conduit" theory, directly addresses the issue in the instant case.  In *Gropper*, the trustee sought to recover from a law firm a preferential transfer that was deposited in the law firm's escrow account by the debtor for delivery to the law firm's client.  In holding that the law firm was not an "initial transferee" of the settlement deposit, Judge Galgay found that "the [client's law] firm acted as a mere conduit of funds from [the debtor] to [the client]…. Here [the client] had the direct business dealings with [the debtor] that gave rise to the debt, subsequent suit, and the allegedly preferential payment. That such amount was funneled through the escrow account does not make [the client's] lawyer an initial transferee." *Gropper*, 33 B.R. at 337.  That logic applies with equal force here.

## C. The Trustee's Common Law Conversion Claim

The Trustee finally argues that by depositing the Settlement Proceeds into his trust account and then later distributing those proceeds to the Debtor, Mr. Paul is liable to the estate for conversion. The Court cannot agree.

Under New York law, conversion is any unauthorized exercise of control by one who is not the owner, which interferes with a superior possessory right of another in property.[37] To sustain a conversion claim, acts must be alleged that are unlawful or wrongful and that are not a mere violation of contractual rights.[38]

The Trustee fails to establish the elements of a claim for conversion. The Trustee has not demonstrated that Mr. Paul exercised dominion and control over the Settlement Proceeds. As discussed in more detail above, the facts before the Court demonstrate quite the opposite—specifically that Mr. Paul did not, and legally could not, exercise dominion over the Settlement Proceeds because he was without the power or discretion to do anything but transmit them in a specified manner.

Indeed, even assuming, *arguendo,* for the purposes of the conversion analysis, that Mr. Paul *did* exercise the required control over the Settlement Proceeds, there would at most be genuine issues of material fact remaining as to whether such control was unauthorized or unlawful. As discussed above, the Settlement Proceeds were delivered to Mr. Paul for the explicit purpose of subsequent transmittal to the Debtor. Mr. Paul's exercise of control over such money—to the extent his paying funds to his client could legally be considered an act of

---

[37]   *W.S.A., Inc., v. ACA Corp.*, 1998 WL 635536, at *4 (S.D.N.Y. Sept. 15, 1998).

[38]   *Fraser v. Doubleday & Co., Inc.*, 587 F. Supp. 1284, 1288 (S.D.N.Y. 1984).

dominion or control—was required under applicable rules of professional responsibility.[39]   The

Trustee has failed to put forth facts or caselaw demonstrating that Mr. Paul's conduct was

unlawful under these circumstances.   It is a cognizable defense to a claim for conversion that the

defendant was acting in accordance with specific instructions or in accordance with the

provisions of a valid contract or agreement.[40]   Thus, even if the Court were incorrect in its ruling

that Mr. Paul failed to exercise the required control over the Settlement Proceeds, there would

still be issues of material fact—whether Mr. Paul was contractually or otherwise legally

obligated to deliver the Settlement Proceeds to the Debtor—that would preclude the Court's

determination on a motion for summary judgment.

For these reasons, the Trustee's motion for summary judgment on her "conversion"

contentions is denied.

III.

Claims Against the Claims Agent

A.    *Liability Under Section 543*

The Trustee also seeks to recover the entirety of the Settlement Proceeds from the Claims

Agent.   For this she relies first on section 543 of the Bankruptcy Code.

Section 543(a) provides:

> A custodian with knowledge of the commencement of a
> case under this title concerning the debtor may not make
> any disbursement from, or take any action in the
> administration of, property of the debtor, proceeds, product,

---

[39]    *See* N.Y. Jur. 2d Attorneys at Law § 144 ("Generally, an attorney holds as trustee any money which he collects for his client and he is under an obligation to keep it separate from his own, and to pay it over to his client without delay….").

[40]    *See* N.Y. Jur. 2d Conversion § 49 ("Among the defense or matters in bar which may be raised by a defendant in an action for conversion … are—…that the defendant was acting in accordance with specific instructions …. [and] that the defendant was acting in accordance with the provisions of a contract or agreement.").

offspring, rents, or profits of such property, or property of
the estate, in the possession, custody, or control of such
custodian, except such action as is necessary to preserve
such property.

The Claims Agent argues that section 543 does not apply here because the Claims Agent

was not a "custodian" of the Debtor.  The Court agrees.

By its plain terms, section 543 only applies to a "custodian".  "Custodian," in turn, is

defined in section 101(11) of the Code.  Section 101(11) provides:

The term "custodian" means

(A) receiver or trustee of any of the property
of the debtor, appointed in a case or proceeding not
under this title;

(B) assignee under a general assignment for
the benefit of the debtor's creditors; or

(C) trustee, receiver, or agent under
applicable law, or under a contract, that is appointed
or authorized to take charge of property of the
debtor for the purpose of enforcing a lien against
such property, or for the purpose of general
administration of such property for the benefit of
the debtor's creditors.

It is clear that the Claims Agent does not fall into any of the enumerated definitions of a

"custodian," under either the plain language of the Code's definition of custodian or even (if it

mattered) its spirit.  Each of the enumerated categories describes a situation in which one holds

property on behalf of the Debtor.  The Claims Agent held whatever property it held on behalf of

the Debtor's *opponent* in the state court proceedings.  The Claims Agent, as the *payor* of the

Settlement Proceeds to the Debtor, did not serve as a trustee, receiver, or agent of the Debtor.

The Trustee has not offered any factual or legal support for the contention that the Claims

Agent was a "custodian" of the Debtor.  Accordingly, section 543 is inapplicable to the Claims

Agent.  The Claims Agent's motion for summary judgment is granted, and the Trustee's motion

for summary judgment is denied.

B.      *Liability Under Section 542*

The Trustee alternatively seeks to recover the entirety of the Settlement Proceeds from

the Claims Agent pursuant to section 542 of the Bankruptcy Code.  Section 542 provides, in

relevant part, that:

> (a) Except as provided in subsection (c) or (d) of this
> section, an entity, other than a custodian, in possession,
> custody, or control, during the case, of property that the
> trustee may use, sell, or lease under section 363 of this title,
> or that the debtor may exempt under section 522 of this
> title, shall deliver to the trustee, and account for, such
> property or the value of such property, unless such property
> is of inconsequential value or benefit to the estate….
>
> (c) Except as provided in section 362(a)(7) of this title, an
> entity that has *neither actual notice nor actual knowledge*
> *of the commencement of the case concerning the debtor*
> *may transfer property of the estate*, or pay a debt owing to
> the debtor, in good faith and other than in the manner
> specified in subsection (d) of this section, to an entity other
> than the trustee, with the same effect as to the entity
> making such transfer or payment as if the case under this
> title concerning the debtor had not been commenced.[41]

While there may be other reasons why summary judgment against the Claims Agent

cannot be granted,[42] one reason is compelling.  That reason requires not just denying the

---

[41]     Emphasis added.

[42]     It might be the case that the Claims Agent held the Settlement Proceeds at a time when they had already
become property of the Estate, though the record is not clear as to this point, and, if it ever mattered, the
Court would wish to see further evidence in this regard.  Also, after the parties submitted their motion
papers here, a circuit court split developed over whether trustees may compel turnover of estate property
under section 542 from entities who do not have possession of the property at the time turnover is sought.
*See Brown v. Pyatt (In re Pyatt)*, 486 F.3d 423, 429 (8th Cir. 2007) (holding that possession at the time of
turnover is required); *In re Shearin*, 224 F.3d 353, 356 (4th Cir. 2000) (holding that possession at time of
turnover is not required); *Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. (In re USA
Diversified Prods., Inc.)*, 100 F.3d 53, 56 (7th Cir. 1996) (holding that possession at time of turnover is not
required).  The Second Circuit has yet to decide this issue.  The Court does not need to decide the issues

Trustee's motion for summary judgment against the Claims Agent, but also granting the Claims Agent's motion for summary judgment.

Assuming, without deciding, that the Claims Agent held the Settlement Proceeds at a time when they were property of the estate, and also that there is a right of action under section 542(a) to secure turnover of property that no longer is held by the defendant in the turnover action, the Trustee nevertheless cannot recover, because the Claims Agent did not have actual notice or actual knowledge of the Debtor's bankruptcy filing. Thus this case falls squarely within the safe harbor of section 542(c).

The Supreme Court has repeatedly directed the lower courts to construe statutes in accordance with their plain meaning.[43] Pronouncements of the Second Circuit hold likewise.[44] At least in the respects relevant here,[45] section 542(c) is unambiguous, and must be construed in accordance with its plain meaning—with the result that the Claims Agent, a good faith entity without *actual* notice and *actual* knowledge of the commencement of a debtor's bankruptcy case,

---

described in this footnote now. The motions can be decided under section 542(c) of the Bankruptcy Code, discussed below.

[43]  *See, e.g., Lamie v. U.S. Tr.*, 540 U.S. at 534 ("The starting point in discerning congressional intent is the existing statutory text…. It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.")(citation and quotations omitted); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (The task of resolving a dispute over the meaning of a statute "begins where all such inquiries must begin: with the language of the statute itself").

[44]  *See, e.g., Puello v. Bureau of Citizenship & Immigration Servs.*, 511 F.3d 324, 327 (2d Cir. 2007).

[45]  Other courts have found ambiguity in section 542(c), but as applied in different circumstances. For example, the Seventh Circuit in *Boyer* held that the draftsmen of section 542(c) must have intended that "the relevant knowledge or notice [in section 542(c)] is knowledge or notice to a possessor of property that a bankruptcy proceeding has begun *and* that the property in the possessor's custody was property of the debtor in that bankruptcy proceeding." 100 F.3d at 57 (emphasis in original). This conclusion necessarily followed from the court's earlier holding—that a party could be subject to turnover even if it did not possess the property at the time turnover was sought—and from its fear that "actual knowledge" only of a bankruptcy filing—as opposed to "actual knowledge" that one possessed estate property—would turn entities into "financial lepers" too afraid to deal with anyone connected to a debtor. Issues of that character are not present here.

cannot be held to be liable for turnover of the value of any property that with the benefit of

hindsight and knowledge the Claims Agent did not then have, may now be regarded to be

property of the estate.

In her motion for summary judgment, the Trustee points to two documents as evidence

that the Claims Agent had actual notice and actual knowledge of the debtor's bankruptcy filing—

the Devine Affidavit and O'Donovan/Devine Emails.  To the contrary, however, these

documents, as well as the Moon Affidavit, demonstrate that the Claims Agent did not have actual

knowledge or actual notice of the Debtor's bankruptcy filing.

The Trustee's omissions from her quotation of the Devine Affidavit distort the substance

of Mr. Devine's sworn statement, and in a manner that is troubling to the Court.  The Trustee

quotes a portion of paragraph 10 to say "[d]uring my settlement discussions with Mr. Paul, it was

my recollection that he informed me that the [p]laintiff Moon … was in bankruptcy," as proof

that the Claims Agent knew of the Debtor's filing prior to the close of its settlement

negotiations.[46]  But when Paragraph 10 of the Devine Affidavit is quoted as it actually reads—

and without leaving out material whose omission dramatically changes the substance of that

paragraph[47]—the Devine Affidavit said something very different:

> During my settlement negotiations with Mr. Paul, it was
> my recollection that he informed me that plaintiff Moon
> needed the money, that there were medical liens, and that
> she was in bankruptcy *or was contemplating bankruptcy or
> something like that*.  It was at this time that I advised my

---

[46]    *See* Trustee Aff. of Undisputed Facts at ¶ 10 and Trustee Reply to Objections at 4.

[47]    Of course counsel can omit immaterial matter from quoted matter, and doing so when the omitted matter is
inconsequential can often be helpful to the Court.  But the legal community must remain mindful that it is
manifestly improper to do so when the omission of matter has the purpose or effect of changing the quoted
matter's meaning.

counsel immediately of the *potential possibility of bankruptcy*.[48]

When the omitted matter is considered, this paragraph does not support the Trustee's contention. Rather, it does not contradict the testimony provided by Mr. Paul and the Debtor— that the Debtor informed Mr. Paul (who informed Mr. Devine) of the Debtor's financial difficulty and of her consultation with a bankruptcy attorney, but that neither Mr. Paul nor Mr. Devine had actual knowledge or a belief that a filing had occurred.

The Trustee similarly mischaracterizes the O'Donovan/Devine Emails, choosing to rely on an earlier (and later corrected) understanding. In the first of these two emails, Mr. Devine wrote to Mr. O'Donovan that "[Mr. Paul] has indicated to me that there are outstanding liens on the medicals as the plaintiff has filed for bankruptcy."[49] However, this was only a temporary understanding that was later corrected. Mr. Devine later explained in his affidavit that this portion of the email demonstrated "a poor choice of words" by someone "not familiar with the bankruptcy courts or any bankruptcy issues"[50]—and more importantly that the purpose of the email was to highlight the "possible issue of bankruptcy" to its counsel in order for the Claims Agent to consider its ramifications on the settlement process.[51]

Even more critically (as in the absence of anything further, the earlier understanding might create an issue of fact, precluding summary judgment in favor of either party), the understanding changed before the payment was made. The Trustee fails to make reference to the very critical later e-mail included in Exhibit H, in which Mr. O'Donovan replied to Mr. Devine

---

[48]    Devine Aff. ¶ 10 (emphasis added).

[49]    *See* Claims Agent Summ. Judgment Motion Exh. H (emphasis omitted).

[50]    *See* Devine Aff. at ¶ 8.

[51]    *Id.*

to explain that he spoke with Mr. Paul and confirmed that Ms. Moon was only "contemplating bankruptcy and maybe sought legal advice but has not filed."[52]  The email documents the Claims Agent's assertion that it never had actual notice or actual knowledge of the Debtor's bankruptcy filing.  And except for the efforts to extract contrary inferences from the selective quotations described above, the Trustee has introduced no evidence to the contrary.

In any event, the Claims Agent did not merely rely on Mr. Paul's oral representations concerning his client's bankruptcy status.  Instead, as indicated in the O'Donovan/Devine Emails, Mr. O'Donovan demanded that Mr. Paul obtain an affidavit from the Debtor declaring, under oath, that "she has not filed for bankruptcy."[53]  The Debtor obliged, and provided an affidavit declaring that she had "not filed for any bankruptcy proceedings in any court and there is presently no petition pending to be filed with any court."[54] Even if Mr. Devine originally had the understanding he did, and even if a reasonable person under these circumstances would inquire beyond Mr. Paul's assertions (a question the Court need not answer because the Claims Agent did in fact examine further), the Moon Affidavit, in the absence of any other facts or notice, closed the matter.[55]

Thus the Claims Agent has established all of the elements for application of the section 542(c) exception to turnover.  Accordingly, the Claims Agent's motion for summary judgment is

---

[52]     *See* Claims Agent Summ. Judgment Motion Exh. H.

[53]     *See id.*

[54]     *See id.* at Exh. F.

[55]     The Trustee has argued that Mr. Paul and/or the Claims Agent, when faced with the uncertainty as to whether or not the Debtor had filed a bankruptcy petition, could have engaged in a docket search in this Court to ascertain whether or not the Court had a record of such a filing, and of course the Trustee is right in this regard.  Plainly it would be the better practice to have done so, and if such a course had been taken, it would have saved Mr. Paul and the Claims Agent considerable burden and expense, even though the Court awards relief to the Trustee only in part.  But the Court applies the relevant statutory provisions as they are written, and none bases liability on a failure of a duty to inquire.

granted, and the Trustee's motion for summary judgment granting turnover of the Settlement

Proceeds is denied.

## IV.

### Denial of the Debtor's Discharge

The Trustee also seeks revocation of the Debtor's discharge pursuant to sections

727(d)(1) and (d)(2) of the Bankruptcy Code.  Section 727(d) provides, in relevant part:

> (d) On request of the trustee … and after notice and a
> hearing, the court shall revoke a discharge granted under
> subsection (a) of this section if—
>
>> (1) such discharge was obtained through the fraud
>> of the debtor, and the requesting party did not know
>> of such fraud until after the granting of such
>> discharge;
>
>> (2) the debtor acquired property that is property of
>> the estate, or became entitled to acquire property
>> that would be property of the estate, and knowingly
>> and fraudulently failed to report the acquisition of
>> or entitlement to such property, or to deliver or
>> surrender such property to the trustee

The Second Circuit has cautioned that revocation of a debtor's discharge is an "extreme

penalty," and that the provisions of the Bankruptcy Code dealing with a debtor's discharge

should be "construed strictly against those who object to the debtor's discharge and liberally in

favor of the bankrupt."[56] The party seeking revocation of a fraudulently procured discharge has

the burden of proving all the facts upon which revocation is conditioned by the statute.[57]

Whether revocation is sought under section 727(d)(1) or (2), it is clear from the section's

plain terms that the Trustee must establish the Debtor's knowledge and fraudulent intent.  "The

---

[56]    *State Bank of India v. Chalasani* (*In re Chalasani*), 92 F.3d 1300, 1310 (2d Cir. 1996) (citation and quotation marks omitted).

[57]    *See Bear Stearns & Co. v. Stein (In re Stein)*, 102 B.R. 363, 367 (Bankr. S.D.N.Y. 1989).

fraud which must be shown is fraud 'in fact', such as the intentional omission of assets from the schedules, and must involve *intentional wrong*."[58]

In the absence of an express admission of fraudulent intent, a trustee can rely on references to circumstantial evidence, including the debtor's conduct and all of the facts and circumstances of the case,[59] and a pattern of reckless indifference or disregard for the truth can support an inference of fraudulent intent.[60]  But here, where other evidence likewise is in the record that suggests contrary inferences, the Court cannot shortcut the process by resort to summary judgment.

As discussed above, the Debtor plainly failed to report or surrender estate property to the Trustee.  But the key issue is whether the Debtor acted with the required knowledge and fraudulent intent.  Since the Debtor has not admitted such knowledge or intent—and in fact has alleged ignorance or mistake as to much of the relevant conduct—the Trustee relies on circumstantial evidence to carry her burden.  The Trustee has put forward one such piece of evidence—that the Debtor filed a second bankruptcy petition shortly after receiving her discharge in this case and again failed to disclose the Settlement Proceeds.  But that raises as many questions as it answers, as it suggests a great deal of Debtor uncertainty and confusion.

Here the Court is presented with an elderly woman whose statements and writings evidence, at the least, a material possibility of ignorance and confusion.  And the record reflects,

---

[58]     6 *Collier on Bankruptcy* ¶ 727.15[2] (15th ed. 2008) (emphasis added).

[59]     *See Sicherman v. Rivera (In re Rivera)*, 2007 WL 130415, at *5 (B.A.P. 6th Cir. Jan. 11, 2007) ("Because only the debtor can testify directly concerning his intent and the debtor herein asserts that his intentions were not fraudulent, determining whether he acted with fraudulent intent is difficult. However, fraudulent intent may be inferred from all the facts and circumstances. Additionally, the Debtor's 'whole pattern of conduct' can support a finding of fraudulent intent.") (citations omitted).

[60]     *See Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1584 n.4 (2d Cir. 1983) (citing authority that reckless indifference to the truth is the equivalent of fraud, and that a pattern of reckless and cavalier disregard for truth can evidence the necessary fraudulent intent under section 727).

to put it mildly, minimal communications with the Debtor on the part of the counsel who filed

the bankruptcy case on her behalf.  Under these circumstances, the Court needs to see and hear

the Debtor's testimony personally (along with the testimony of anyone else who might have

knowledge as to what, if anything, she actually knew and intended), before taking away the

Debtor's discharge.

<u>Conclusion</u>

For the reasons set forth above, the Claims Agent's motion for summary judgment that it

is not liable to the Estate for the Settlement Proceeds is granted, and the Trustee's motion for

summary judgment as directed at the Claims Agent is denied.  The Trustee's motion for

summary judgment as directed at Mr. Paul is granted to the extent that it seeks disgorgement of

the portion of the Settlement Proceeds that Mr. Paul received for his fees and expenses.  But the

Trustee's motion for summary judgment as directed at Mr. Paul for the remainder of the

Settlement Proceeds is denied.  The Trustee's motion as directed at the Debtor is denied.[61]

Counsel for the Claims Agent is to settle one or more orders and judgments addressing all

of the matters addressed is in this Decision.  The time to appeal from this Decision, or any part of

it, will run from the time of the entry of the related order(s) and judgment(s) (which the Court

will enter on the same day), and not from the time of this Decision.


Dated: New York, New York                  __*s/Robert E. Gerber*_____
      April **_23_** , 2008                        United States Bankruptcy Judge

---

[61]     Matters as to the extent, if any, to which Mr. Paul might have an unsecured claim or rights under N.Y.
Judiciary Law § 475 are not yet before the Court.  The parties' rights as to these matters, or anything else
not addressed in this decision, are reserved.